JS-6

BRUCE C. GRIDLEY (SBN 057166
Member of the Firm
KANE, BALLMER & BERKMAN
515 So. Figueroa Street – Suite 1850
Los Angeles, California  90071
Telephone:    (213) 617-0480
Facsimile:     (213) 625-0931
Email:  bgridley@kbblaw.com

Attorneys for Defendants, MONIR M. AWADA
and TRES HERMANOS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA,

WESTERN DIVISION

| | |
|---|---|
| GIANNI VERSACE, S.p.A. a Foreign Corporation<br><br>        Plaintiff,<br><br>    vs.<br><br>MONIR M. AWADA, et al.,<br>MOHAMED BDAIR, an Individual  ALI CHAHINE, an Individual GINNO CHAHINE, an Individual; MOHAMAD N. CHAHINE, an Individual;     NADER     CHAHINE,     an Individual' MOUSSA DAANA, an Individual; AKIL  EL  REDA,  an  individual;  ALI KHALIL ELREDA, an Individual, FIRAS MOHAMMAD FAKIH, an Individual; ALI YOUSSEF     FARHAT,     an     Individual; HASSAN     MOHAMAD     FARHAT,     an Individual; MOHAMAD ALI FARHAT, an Individual  YOUSSEF  M.  FARHAT,  an. Individual; ALI ADNAN GHACHAM, an Individual; BASSAM ADNAN GHACHAM, an     Individual;     TAGRID     ADNAN GHACHAM, an Individual; ALI DAOUD GHACHAM,     an     Individual;     HUSSEIN DAOUD     GHACHAM,     an     Individual; MOHAMED  GHACHAM,  an  Individual; OSSAMA     DAOUD     GHACHAM,     an Individual;   RAMONA   GONZALEZ,   an | Case No. CV 03-3254 GAF (RNBx)<br><br>JUDGMENT RE DEFENDANTS:<br><br>1.  MONIR M. AWADA<br>2.  TRES HERMANOS, INC. |

Individual; MAHMOUD H. HARB, an INDIVIDUAL; MAHA ASSAAD JOMAA, an Individual; MOUSSA MATAR an Individual; HUSSEIN MOURAD, an Individual; SAMIR MOURAD an Individual; YAMEL MOURAD, an Individual; YOUNG JIN PARK, an Individual; ABDEL NABI SAAB, an Individual; ALEX SAAB, an Individual; ALI HUSSEIN SAAB, an Individual; ALI NAIM SAAB, an Individual; ELSA SAAB, an Individual; HASSAN SAAB, an Individual; HUSSEIN YOUSSEF SAAB, an Individual; AHMAD M. SAAB, an Individual; TASHIN SAAB, an Individual; YOUSEF SAAB, an Individual; AHMED KHALIL SALEH, an Individual; HUSSEIN KHALIL SALEH, an Individual; MAHMOUD KHALIL SALEH, an Individual; ABBAS SALEH SALEH, an Individual; ALI SALEH SALEH, an Individual; HASSAN SALEH SALEH, an Individual; HUSSEIN SALEH SALEH, an Individual; NAJIBE SALEH SALEH, an Individual; ABBAS MAHMOUD SALEH, an Individual; ALI SLEIMAN SALEH, an Individual; HUSSEIN ALI SALEH, an Individual; MIRIAM S. SALEH, an Individual; MUSTAPHA ALI SALEH, an Individual; AHMAD SALIM, an Individual; IKHLAS SALIM, an Individual; ANA MARIA SANDOVAL, an Individual; JOSE G. SANDOVAL, an Individual; ALI M. TEHFI, an Individual; KHALED TEHFE, an Individual; NAZIH TEHFE, an Individual; AMA CASUALS, INC., a California Corporation; AWADA BROS., INC., a California Corporation; AWADA BROTHERS, INC., a California Corporation; THE BRAND NAME CONNECTION, INC., a California Corporation; CENSO UNICO, INC., a California Corporation; DENIM PALACE, INC., a California Corporation; GHACHAM, INC., a California Corporation; HIP HOP CONNECTIONS, INC., a California Corporation; JAVINCCI, LLC., a California Limited Liability Corporation; LA BRAND NAME, INC., a California Corporation; LIMITED CLOTHING, INC., a

California Corporation; LOS HERMANOS, INC., a California Corporation; MAS SPORTSWEAR, INC., a California Corporation; MGM TRADING, INC., a California Corporation; MIRAGE CONNECTION, INC., a California Corporation; NUEVA TIENDA, INC., a California Corporation dba NUEVA TIENDA; SAAB & SONS CLOTHING, INC., a California Corporation; SAAB GROUP, INC., a California Corporation; SPORT JEANS, INC., a California Corporation; TRES HERMANOS INC., a California Corporation; and UNESCO JEANS, INC., a California Corporation aka UNESCO, INC., and DOE 10, unknown business entity, Inclusive,

Defendants.

**WHEREAS**, on September 4, 2009, as to Group B goods, the Court granted summary judgment in favor of Gianni Versace S.p.A ("VERSACE") and against defendants MONIR M. AWADA, an individual,   and TRES HERMANOS, INC., a California corporation, ("Defendants") as to liability of Defendants for willful trademark infringement and counterfeiting, false designation of origin and unfair competition as to the Registered Marks as follows:

1,725,686

1,891,546

1,875,093

2,078,918

2,121,984

2,387,508

2,078,918

2,121,984

2,426,052

(Docket No. 1503) (Attached as Exhibit 1 and Docket No.1506 attached as Exhibit 2)

**WHEREAS**, on May 5, 2010, following jury trial on the question of damages, the jury verdict awarded in favor of VERSACE and against Defendants statutory damages of $20,000,000 as to Group B goods pursuant to 15 U.S.C. § 1117(c) (Docket No. 1547). (Attached as Exhibit 3)

**WHEREAS**, on March 2, 2011, as to Group A goods, the Court found for VERSACE and against Defendants as to liability for trademark infringement as to Registered Marks as follows:

1,541,272

1,641,270

1,725,686

1,875,093

2,121,984

2,078,918

(Docket No. 1624) (attached as Exhibit 4)

**WHEREAS**, on March 2, 2011 the Court awarded to VERSACE and against Defendants statutory damages of $390,000 as to Group A goods pursuant to 15 U.S.C. § 1117(c) (Docket 1624).

**WHEREAS**, on March 2, 2011 the Court ruled that the Judgment shall include injunctive relief in favor of VERSACE and against Defendants (Docket 1624).

**IT IS ORDERED, ADJUDGED AND DECREED** as follows:

1.    Defendants willfully violated Federal Lanham Act as alleged in Count V – Trademark Infringement and Counterfeiting (15 U.S.C. § 1114(1)); Count VI – False Designation of Origin (15 U.S.C. § 1125(a)); Count VII - Trademark Dilution (15 U.S.C. § 1125(c) and Count IX-State Unfair Competition (Cal. Bus. & Prof. Code § 17200) as to Group B goods.

2.      Defendants violated Federal Lanham Act as alleged in Count V – Trademark Infringement and Counterfeiting (15 U.S.C. § 1114(1)) as to Group A goods.

3.      Defendants and their subsidiaries, related entities, divisions, officers, owners, shareholders, employees, affiliates, servants, representatives, agents, predecessors, assigns and successors in interest of any kind, and all persons, firms, entities, or corporations under their direction and control or in active concert or participation with them, are immediately and permanently enjoined throughout the world from directly or indirectly infringing, counterfeiting, or diluting the VERSACE Trademarks ("Versace trademarks"), which include, but are not limited to, the following:

1,541,272

1,641,270

1,725,686

1,875,093

1,891,546

2,078,918

2,381,984

2,387,508

2,121,984

2,426,052

on Registry with the United States Patent & Trademark Office, in any manner, including generally, but not limited to manufacturing, importing, distributing, advertising, selling, and/or offering for sale of any merchandise which infringes said trademarks and specifically from:

(a)     Imitating, copying or making unauthorized use of any or all of the VERSACE trademarks;

(b)     Importing, manufacturing, producing, possessing, distributing, circulating, advertising, promoting, displaying, selling, and/or offering for sale, any non-genuine product bearing any simulation, reproduction, counterfeit, copy, or colorable imitation or reproduces, or utilizes the likenesses of or which copy or are likely to cause consumer confusion with any of

the VERSACE trademarks or confusingly similar mark or trade name;

(c)     Manufacturing, distributing, selling or offering for sale or in connection thereto any unauthorized promotional materials, labels, packaging or containers which picture, reproduce or utilize the likenesses of, or which are likely to cause consumer confusion with any of the VERSACE trademarks;

(d)     Using any false designation of origin, false description, including words, symbols, trademark or trade name tending to falsely describe or represent, or is likely to confuse, mislead, or deceive purchasers, Defendants' customers, or members of the public, that unauthorized merchandise manufactured, distributed, advertised, sold and/or offered for sale by Defendants originate from VERSACE, or that said merchandise has been sponsored, authorized, endorsed, approved, licensed by, associated, or is in any way connected or affiliated with VERSACE;

(e)     Transferring, consigning, selling, shipping or otherwise moving any non-genuine VERSACE goods, packaging or other materials in Defendants' possession, custody or control bearing a design, or mark substantially identical to or confusingly similar with or any or all of the VERSACE trademarks or trade dress;

(f)     Diluting and infringing the VERSACE trademarks and damaging VERSACE's goodwill, reputation and business;

(g)     Otherwise unfairly competing with VERSACE, or its subsidiaries or affiliated companies;

(h)     Passing off or selling any products which are entirely genuine VERSACE products as and for VERSACE products, including products utilizing VERSACE labels, packaging or containers that have been in any way modified without the written permission of VERSACE;

(i)     Applying to the United States Patent & Trademark Office for the registration of any trademark that is a colorable imitation of any or all of the VERSACE trademarks, or confusingly similar mark or trade name;

(j)     Using the VERSACE trademarks or any such reproduction, counterfeit,

6

JUDGMENT RE DEFENDANTS

copy, or colorable imitation in connection with the manufacture, importation, distribution, advertising, publicity, sale and/or offering for sale, of any other merchandise not referred to above; and

> (k)     Instructing, assisting, inducing, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to above.

4.     The jurisdiction of this Court is retained for the purpose of making any further orders necessary or proper for the construction or modification of the Judgment, the enforcement thereof and the punishment of any violations thereof.

5.     Judgment is rendered in favor of VERSACE and against Defendants, as to Count V – Trademark Infringement and Counterfeiting (15 U.S.C. § 1114(1)); Count VI – False Designation of Origin (15 U.S.C. § 1125(a)); and Count VII - Trademark Dilution (15 U.S.C. § 1125(c)) in the sum of $20,000,000 as to the willful violations related to the Group B goods.

6.     Judgment is rendered in favor of VERSACE and against Defendants, as to Count V – Trademark Infringement and Counterfeiting (15 U.S.C. § 1114(1)); in the sum of $390,000 as to the violations related to the Group A goods.

7.     All other claims and causes of action as between VERSACE and MONIR M. AWADA and TRES HERMANOS, INC., are dismissed with prejudice.

8.     All counterfeit and infringing VERSACE products currently in the possession, custody or control of Defendants, their parents, subsidiaries, related entities, divisions, officers, owners, shareholders, employees, affiliates, servants, representatives, agents, predecessors, assigns and successors in interest of any kind, and all persons, firms, entities, or corporations under their direction and control or in active concert or participation with them, shall be turned over to counsel for Plaintiff within ten (10) business days of this Order and destroyed under the direction of VERSACE.

9.    All counterfeit and infringing VERSACE products seized in this action by VERSACE from Defendants shall be destroyed under the direction of VERSACE.

**IT IS SO ORDERED**

DATED:  August 29, 2011

_____

Hon. Gary A. Feess
UNITED STATES DISTRICT JUDGE

# Exhibit 1

Ex-1 - 9

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 10 of 49   Page ID
Case 2:03-cv-03254-GAF -RNB   Document 8109   Filed 09/04/09   Page 1 of 11   Page ID
#:5994
#:5994

LINKS: 1436-39

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-3254-GAF | Date | September 4, 2009 |
|---|---|---|---|
| Title | Gianni Versace v. Monir M. Awada, et al. | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:**     **(In Chambers)**

**ORDER RE: MOTION FOR SUMMARY JUDGMENT**

The following sets forth the Court's ruling on Plaintiff Gianni Versace, S.p.A.'s motion for summary judgment on its so-called Group B claims. For the reasons discussed below, the Court **GRANTS** the motion establishing liability for trademark infringement, false designation of origin and unfair competition. The Court **GRANTS** Plaintiff the permanent injunction it seeks but defers the determination of statutory damages to a jury.

**I. BACKGROUND**

The relevant background facts regarding the issue of Group B liability need little discussion. On June 7, 2003, pursuant to a seizure order issued by the United States District Court, a coordinated series of seizures occurred at 19 different Tres Hermanos stores, which were owned and operated by Defendant Monir Awada. Approximately 4,000 items, designated by the parties as "Group B" items, were seized bearing counterfeit Versace trademarks consisting of the Versace name (a word mark), and/or the Versace stylized Medusa. Group B items consisted of T-shirts, collared shirts, sweaters, leather jackets, and jeans. Versace trademarks were also incorporated into the design of buttons, rivets, and embroidery.

Awada was well aware of the Versace name and marks – his business had an account with Versace for several years from about 1994 through 2001. During that period, Awada operated his business as an authorized Versace retailer and was permitted to sell genuine Versace ready-to-wear merchandise, which were marketed under the V2 brand line. However, Awada failed in his attempts to negotiate an agreement to carry the Versace Jeans Couture line

EX-1-10

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 11 of 49   Page ID
Case 2:03-cv-03254-GAF -RNB   Document 1520   Filed 09/04/09   Page 2 of 11   Page ID
#:5995

LINKS: 1436-39

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 03-3254-GAF | Date | September 4, 2009 |
| Title | Gianni Versace v. Monir M. Awada, et al. | | |

and his V2 account was terminated by Versace in 2000 or 2001. Awada has been aware of the Versace trademarks at least since he began buying their line in 1994. Awada is also aware of the significance of a trademark and its infringement. He has filed several applications for trademark protection with the United States Patent and Trademark Office over the past ten years, and has been involved in other trademark litigation. Defendants also manufactured their own line of clothing and obtained their own "RN" number, a number which is printed on tags sewn inside clothing to identify the garment's manufacturer. Defendants were, therefore aware, of the significance of the "RN" number in designating the origin of a good.

**II. ISSUES PRESENTED**

In the present motion for summary judgment, Versace asks the Court to adjudicate the following issues:

(1) Defendants' liability for false designation of origin, unfair competition and trademark infringement with respect to the Group B items;

(2) Defendants' willfulness in its acts of trademark infringement;

(3) The number of goods in Group B;

(4) The number of infringements caused by the Group B goods;

(5) The statutory damages caused by the Group B infringements.

In the present Order, the Court resolves the first three issues. The Court is unable to determine the number of infringements at this time. The parties are **ORDERED** to meet and confer and jointly submit a chart to the Court, which is supported by evidence and which indicates which types of goods infringed which Versace trademarks. The chart must be submitted on or before **Friday, September 18, 2009.** With respect to the amount of statutory damages to which Plaintiff is entitled, that determination must be made by a jury and, thus, is deferred to trial.

**III. DISCUSSION**

Plaintiff moves for summary judgment on its claims for trademark infringement, false designation of origin and unfair competition under California's Business and Professions Code. § 17200. In the present case, as in many trademark infringement cases, the essential elements of these two federal claims are identical. <u>Brookfield Comme'ns, Inc. v. West Coast Entm't Corp.</u>,

*Ex-1   11*

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 12 of 49   Page ID
Case 2:03-cv-03254-GAF -RNB   Document 1503   Filed 09/04/09   Page 3 of 11   Page ID
#:5996
#:5991

LINKS: 1436-39

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 03-3254-GAF | Date | September 4, 2009 |
|---|---|---|---|
| Title | Gianni Versace v. Monir M. Awada, et al. | | |

174 F.3d 1036, 1047 n.8 (9th Cir. 1999) (noting that infringement and false designation of origin claims are often identical, except that false designation of origin claims protect both registered and unregistered trademarks and can protect a wider range of practices, such as false advertising). Further, evidence that supports the federal claims is also sufficient to establish Defendants' liability under the state law claim for unfair competition. Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."); Philip Morris v. Shalabi, 352 F. Supp. 2d 1067, 1072 (C.D. Cal. 2004) (noting the identity between the essential elements and standard applied to three distinct claims of federal trademark infringement, federal false designation of origin, and state unfair competition).

Therefore, as to these three claims, the Court need only focus on the legal merits of the claim for federal trademark infringement. Analyzing the merits of the infringement claim is sufficient because the standard of infringement, i.e., the likelihood of confusion, is essentially implicated in the remaining federal and state causes of action. M2 Software, Inc. v. Madacy Entm't Corp., 421 F.3d 1073, 1080 (9th Cir. 2005) ("The test of trademark infringement under state, federal, and common law is whether there will be a likelihood of confusion."); see also Academy of Motion Pictures v. Creative House Promotions, Inc., 944 F.2d 1446, 1457 (9th Cir. 1991) (holding that under both federal trademark infringement and state unfair competition statutes, the "ultimate test" is whether a likelihood of confusion exists) (internal quotations omitted).

### A. The Standard for Infringement

Section 32(1) of the Lanham Act proscribes the use in commerce of any "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale . . . of any goods or services" that is likely to deceive or cause confusion among consumers. 15 U.S.C. § 1114(1)(a). "Whereas section 32 provides protection only to registered marks, section 43(a) protects against infringement of unregistered marks and trade dress as well as registered marks, and protects against a wider range of practices such as false advertising and product disparagement." Brookfield, 174 F.3d at 1046 n.8 (citations omitted).

The "core element" of any trademark infringement or unfair competition claim is "'likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products.'" Freecycle Network, Inc. v. Oey, 505 F.3d 898, 902 (9th Cir. 2007) (quoting Abercrombie & Fitch Co. v. Moose Creek, Inc., 486 F.3d 629, 633 (9th Cir. 2007)); Brookfield, 174 F.3d at 1053. Courts in the Ninth Circuit apply eight non-exclusive

Ex-1- 12

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 13 of 49   Page ID
Case 2:03-cv-03254-GAF -RNB   Document 1632   Filed 09/04/09   Page 4 of 11   Page ID
#:5997
#:5997

LINKS: 1436-39

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 03-3254-GAF | Date | September 4, 2009 |
| Title | Gianni Versace v. Monir M. Awada, et al. | | |

factors to determine likelihood of confusion: (1) the strength of the mark; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care the purchaser is likely to exercise; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir. 1979), abrogated on other grounds as recognized in Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 810 n.19 (9th Cir. 2003). "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." Brookfield, 174 F.3d at 1054. "Other variables may [also] come into play depending on the particular facts presented." Sleekcraft, 599 F.2d at 348 n.11.

### B. The Group B Goods Infringed the Versace Marks

The question of infringement has been conceded by Defendants. In five different proposed pre-trial conference orders, Defendants agreed that the Group B goods infringe on the Versace marks. (Docket Nos. 1132, 1197, 1216, 1397, 1420.) Although they now contend that their stipulated admissions should be disregarded because no judge signed the proposed orders, the proposed orders constitute judicial admissions on the part of defendants acknowledging infringement. Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1998) ("[A] pretrial order is a judicial admission.") "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." Id. (quotation marks and citation omitted).

But even if the Court were to ignore the Defendants' admissions, the issue is not reasonably in dispute. Defendants were in possession of and were selling to the public goods bearing counterfeit Versace marks, including the use of the Versace name, that were not readily distinguishable from the genuine Versace mark. The Versace mark is a strong mark that has been in use in the market place for many years, it was being used on goods that are identical to the kind of goods sold by Versace, the counterfeit marks, as noted, were indistinguishable from the genuine marks, the goods were being sold through the same marketing channels (indeed through the same retailer) that sells Versace goods, and the marks were incorporated into the goods such that even an observant consumer would have had great difficulty in determining that the goods were not genuine Versace clothing. Sleekcraft, 599 F.2d at 348–49. Indeed, confusion was not only likely in this case, it was the objective of the Defendants – the evidence plainly demonstrates an intent to pass off non-Versace wares as the genuine article.[1]

---

[1]To the extent that Defendants object to the use of purchase orders, seized from the Tres Hermanos store locations, those objections are **OVERRULED.** The Court previously ordered all

*Ex-1 - 13*

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 14 of 49   Page ID
Case 2:03-cv-03254-GAF-RNB   Document 1503   Filed 09/04/09   Page 5 of 11   Page ID
#:5998

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 03-3254-GAF | Date | September 4, 2009 |

| | |
|---|---|
| Title | Gianni Versace v. Monir M. Awada, et al. |

Defendants do not concede the liability of Monir Awada. As explained in the next section, however, the Court finds the record establishes both Tres Hermanos and Monir Awada willfully infringed Versace's marks as a matter of law.

### C. *Willfulness*

#### 1. The Standard

"Willful infringement carries a connotation of deliberate intent to deceive. Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard. . . . Willfulness and bad faith require a connection between a defendant's awareness of its competitors and its actions at those competitors' expense." Lindy Pen Co., Inc., 982 F.2d 1400, 1406 (9th Cir. 1993). Willful infringement can include willful blindness. Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1476 (11th Cir. 1991); Louis Vuitton S.A. v. Lee, 875 F.2d 584, 590 (7th Cir. 1989). "Infringement is not willful if the defendant 'might have reasonably thought that its proposed usage was not barred by the statute.'" Blockbuster Videos, Inc. v. City of Tempe, 141 F.3d 1295, 1300 (9th Cir. 1998).

The Court addressed the elements of willfulness in its July 7, 2009 Order (Docket No. 1420) advising that it would instruct the jury on willfulness as follows:

> If you find that the defendant infringed the plaintiff's trademark, you must also determine whether the defendant did so willfully. A party willfully infringes a trademark if it:
> (1) adopts the mark attempting to gain the value of an established name of another; or
> (2) adopts the mark with a deliberate intent to deceive; or
> (3) knows another may have superior rights in the trademark it adopts and nevertheless deliberately fails to investigate.

Plaintiff has the burden of proving willfulness by a preponderance of the evidence.

Accordingly, the Court addresses the evidence before it in light of the elements set forth in this

---

documents seized from Tres Hermanos admitted without objection because of Awada's discovery violations. These documents unambiguously establish that Awada, through Tres Hermanos, contracted with companies, not affiliated with Versace, that manufactured clothing bearing counterfeit Versace marks at the point of sale.

Ex-1 - 14

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 15 of 49   Page ID
Case 2:03-cv-03254-GAF -RNB   Document 1524   Filed 09/04/09   Page 6 of 11   Page ID
#:5999
#:5994

LINKS: 1436-39

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-3254-GAF | Date | September 4, 2009 |
|---|---|---|---|

| Title | Gianni Versace v. Monir M. Awada, et al. |
|---|---|

instruction.

      2.  The Evidence

      Plaintiff offers deposition testimony from Monir Awada, who admits he was aware of
Plaintiff Versace as a competitor because he used to be an authorized Versace retailer. (SUF 17-
18, 30.) Awada had an ongoing contact at Versace and could have contacted Plaintiff to verify
the authenticity of goods if Awada ever doubted it. (SUF 17-20.) Defendants were aware of and
familiar with the Versace trademarks. (SUF 22-25.) With that knowledge, Defendants
displayed such trademarks on their business cards and in their stores in print, TV and radio
media. (SUF 26-28.) Awada even acknowledged, years after he ceased doing business with
Versace, that he was aware of goods in his stores bearing the Gianni Versace hang tags. (SUF
29.)

      Defendants also had prior knowledge of the nature of trademark rights and protections
and were aware of Plaintiff Versace's trademarks in particular. It is undisputed that Awada has
filed several trademark registrations himself with the United State Patent and Trademark Office
(SUF 31-35) and that Defendants have been civilly prosecuted for trademark violation and
infringement (SUF 36-39). The blatant nature of the infringement, for example the fact that
Versace labels were sewn over and on top of the Pecasos labels that marked the garments
Defendants' manufactured, shows Defendants were directly involved in the infringement. (See
Pl's Ex. E-1.) Several other features of the infringement, such as contradictory labeling where a
hang tag would read "Gianni Versace" but the neck label would read "Versace Jeans Couture"
(see Pls' Exs. D-K), unambiguously demonstrate that Defendants knew (or deliberately closed
their eyes to the fact that) the garments were counterfeit. (See Giles Decl. ¶ 13.)

      In addition, authentic Versace leather goods are manufactured in Italy, never in China or
Korea. (See Giles Decl. ¶¶ 17-18.) The presence of "Made in China" and "Made in Korea"
labels on leather goods made it obvious the jackets were counterfeit and, in addition, evidence
that such "made in" clothing labels were *cut out* of the jackets shows an intent to deceive the
consumer as to the place of manufacture and source of goods and shows knowledge that genuine
Versace goods are not made in China or Korea. (See Pl's Exs. D-1, D-2, E-2, E-4.) Even more
telling, Defendants sold goods that had both "Pecasos" labeling and "Versace Jeans Couture"
labeling on the same garment! (See Exs. E-3, E-5.) Defendants undeniably knew that Pecasos
was a clothing line that Defendants owned and was not associated with Versace. In addition, the
"RN" numbers on the infringing goods showed that they were not manufactured by Versace.
(See Exs. F-1, W-1, F-2, W-2, E-3, W-3, I, W-4.) Defendants themselves obtained and used an
"RN" number so they understood the significance of it.

EX-1 - 15

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 16 of 49   Page ID
Case 2:03-cv-03254-GAF -RNB   Document 1625   Filed 09/04/09   Page 7 of 11   Page ID
#:6000
#:6005

LINKS: 1436-39

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 03-3254-GAF | Date | September 4, 2009 |
|---|---|---|---|
| Title | Gianni Versace v. Monir M. Awada, et al. | | |

Defendants object to Plaintiff's use of Monir Awada's deposition testimony because they argue that Plaintiff never asked Awada questions about, for example, the removed "Made in China" labels or the over-labeling, so he never had a chance to address the allegations. This argument is disingenuous since Awada has refused to make himself available to complete his deposition, in part due to the criminal charges that were pending during much of the litigation, and because Awada has refused to attend trial. (See 01/06/09 Order (Docket No. 1408) at 2 (explaining Awada's refusal to be deposed or attend trial).) Awada's failure to cooperate was the impetus for the Court's ruling that every document seized from Tres Hermanos would be admitted without objection as a sanction. (See id.) The deposition testimony that Plaintiff offers, in conjunction with the admitted facts, establishes that Defendants Tres Hermanos and Monir Awada acted willfully as a matter of law.[2]

### D. *The Number of Group B Goods and Number of Infringements*

Plaintiff contends that Group B consists of 6,000 seized items. However, the means by which Plaintiff reaches that determination is suspect.

Approximately 20,000 allegedly infringing articles were seized. Plaintiff has taken the number of known Group B items and determined its percentage of all of the currently classified

---

[2]Defendants contend that the declaration of Lydia Coronado, an employee of Tres Hermanos, who worked as the office manager in the Huntington Park store from 1998 to 2005, creates genuine issues of fact for trial regarding Defendants' willfulness. (Docket No. 1494.) However, her statements are irrelevant to Awada's state of mind. For example, Coronado states that the clothes sold at Tres Hermanos were virtually all sold at a price point substantially lower than the price listed on the label, usually at only about 30% of the list price. (Coronado Decl. ¶ 9.) She further observed that merchandise was even given away on occasion with the purchase of a more expensive item. (Id.) The Court finds this information regarding marketing practices to be completely immaterial to the issue of willfulness. Further, Coronado claims it "was not my practice nor to my observation of the practice of Monir Awada or other Tres Hermanos employees, for them to examine goods in sufficient detail to reveal such inconsistencies [in the labels on garments]." (Coronado Decl. ¶ 12.) However, her declaration contains insufficient foundation to establish that she was in a position to know what Awada knew or didn't know and what he observed or failed to observed. Nevertheless, she admits that in her June 2009 examination of the goods referred to in the motion for summary judgment she did observe the "overlabeling" shown by Exhibits E-1 and E-5, but claims it "[t]his is not an action that could have been performed by Tres Hermanos at the Huntington Park store [because it] did not have the equipment nor the labor necessary to do that." (Coronado Decl. ¶ 13.) Again, Plaintiffs need not prove that the actual overlabeling was done by Tres Hermanos to establish that the sale of "overlabeled" merchandise was willful. Rather, the sale of such merchandise is strong evidence that Monir Awada and Tres Hermanos willfully marketed clothing bearing what they knew was a counterfeit trademark. In short, the Coronado declaration is not at all persuasive evidence that Monir Awada and Tres Hermanos did not willfully infringe and falls short of establishing a genuine issue of material fact for trial.

EX-1- 16

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 17 of 49   Page ID
Case 2:03-cv-03254-GAF -RNB   Document 1526   Filed 09/04/09   Page 8 of 11   Page ID
#:6001
#:8536

LINKS: 1436-39

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-3254-GAF | Date | September 4, 2009 |
|---|---|---|---|
| Title | Gianni Versace v. Monir M. Awada, et al. | | |

goods. Plaintiff then applies that percentage to the 20,000 infringing articles and concludes that 6,142 items should be included in Group B. However, there is no reason to believe that the ratio of Group A to Group B goods in those that have been classified is representative of the ratio of goods in the unclassified group. Moreover, there is no reason to resort to such a speculative methodology when the goods were seized more than six years ago and could have easily been sorted and classified by now. Accordingly, the Court rejects the 6,142 item figure. However, since Defendants have conceded that 4,000 items properly fit in Group B, the Court concludes that 4,000 is the proper figure for determining the total number of Group B goods.

With respect to the number of infringements, that number depends on how many counterfeit marks are present on each type of good. The parties disagree as to how to determine how many types of goods were sold and how many trademarks were infringed. In a nutshell, Defendants argue the "types of goods sold" should be determined by the "functional purpose test" set forth in Gucci v. MyReplicahandbags.com, 2008 WL 512789 (S.D.N.Y. 2008). Under this test, a shirt would be a shirt, and would encompass all types of shirts, including short-sleeved, long-sleeved, polo, dress, and jersey shirts. Under the "functional purpose test," the functional categories of Group B goods would look something like: jeans, shirts, jackets, sweaters, buttons. The Court indicated in its July 7, 2009 Order (Docket No. 1470) that it was persuaded by Defendants' reasoning.

Plaintiff argues the "types of goods sold" should account for more variation, for example a short-sleeved shirt should be considered a different type of good than a dress shirt. It cites Nike v. Variety Wholesalers, Inc., where the Court recognized a sweatshirt as a different type of good than a shirt. 274 F. Supp. 2d 1352, 1374 (S.D. Ga. 2003), affirmed by 107 Fed. Appx. 183 (11th Cir. May 3, 2004). It also cites Nike, Inc. v. Top Brand Co., Ltd., 2006 WL 2946472, at *3 (S.D.N.Y. Feb. 27, 2006), where the court recognized t-shirts, sweatshirts and polo shirts as three different types of goods. While the cases Plaintiff relies upon reasonably categorized the goods in those particular cases, Plaintiff takes its argument to the extreme, however, and argues that variations in a product's size, shape, color, pattern or fabric would be appropriate to create a different type of good. The Court rejects the idea that every different color or fabric for a shirt creates a new type of good sold for the purpose of determining the number of infringements.

The Court has tentatively determined the appropriate categories, with respect to the Group B Goods are: t-shirts; long-sleeved dress style shirts; collared "polo" style shirts; leather jackets; sweaters; jeans; buttons; rivets; and embroidery. Defendants object especially to buttons, rivets and embroidery being considered separate types of goods. The Court indicated at the hearing on this motion that it would consider further argument regarding the "types of goods sold" with the submission of the infringement chart on or before September 18, 2009.

EX-1- 17

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 18 of 49   Page ID
#:8187
Case 2:03-cv-03254-GAF -RNB   Document 1583   Filed 09/04/09   Page 9 of 11   Page ID
#:6002

LINKS: 1436-39

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-3254-GAF | Date | September 4, 2009 |
|---|---|---|---|

| Title | Gianni Versace v. Monir M. Awada, et al. |
|---|---|

### E. *Statutory Damages*

Because there is an absence of business records or inventories identifying the quantity of sales attributable to the infringing goods or the profits wrongfully garnered by Defendants, Plaintiff seeks statutory damages. The Supreme Court held in Feltner v. Columbia Pictures Television, Inc., which was a Central District of California case involving copyright infringement, that "[t]he right to a jury trial includes the right to have a jury determine the amount of statutory damages," even where liability has been determined by summary judgment. 523 U.S. 340, 353 (1998). Under Feltner, Defendants are entitled to a jury determination of statutory damages. See id. at 355 ("[I]f a party so demands, a jury must determine the actual amount of statutory damages. . . in order to preserve the substance of the common-law right of trial by jury." (internal quotation marks omitted)). Some courts have held it appropriate for a court to determine statutory damages where the plaintiff seeks only the statutory minimum, in other words, where discretion is not exercised to a defendant's detriment. See BMG v. Gonzalez, 430 F.3d 888, 892 (7th Cir. 2005). Here, Plaintiff seeks significantly more than the statutory minimum; it seeks a finding of willfulness – which the Court herein finds – and $25.5 million in damages.

Plaintiff seeks to waive its right to a jury determination of statutory damages after initially demanding it. Federal Rule of Civil Procedure 38(d) states that a party can only withdraw its demand for a jury trial if it has the consent of all parties, usually by stipulation. Fed. R. Civ. P. 38(d); 39(a)(1). Here, Defendants refuse to give their consent. The right to a jury trial is available to all parties, thus, a waiver by one party cannot bind another. See 33 Fed. Proc., L. Ed. § 77:126 (2009); 47 Am. Jur. 2d Jury § 70 (2009). Strictly construing Rule 38, the Court will not permit Plaintiff to withdraw its demand for a jury trial because Defendants do not consent, and because the law holds clearly that Defendant has a right to a jury determination of statutory damages. In addition, Plaintiff did not alert Defendants or the Court that it sought to waive its right to a jury trial until it filed its motion for summary judgment on June 15, 2009. (Docket No. 1436.) The Ninth Circuit recognizes the importance to the Court and the parties of notice well in advance of trial as to what kind of trial is going to occur. See Lutz v. Glendale Union High School, 403 F.3d 1061, 1065 (9th Cir. 2005) ("[T]he purpose of Rule 38's demand requirement is to inform the Court and counsel well in advance of trial as to the trial method desired." (internal quotation marks omitted)).

### F. *Permanent Injunction*

Plaintiff seeks a permanent injunction preventing Defendants from infringing its trademarks. Under the Lanham Act, the District Court may grant an injunction "according to

EX-1 - 18

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 19 of 49   Page ID
#:8128
Case 2:03-cv-03254-GAF -RNB   Document 1603   Filed 09/04/09   Page 10 of 11   Page ID
#:6003

LINKS: 1436-39

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 03-3254-GAF | Date | September 4, 2009 |

| | |
|---|---|
| Title | Gianni Versace v. Monir M. Awada, et al. |

principles of equity" to remedy violations of a trademark owner's rights under §§ 1114 and 1125, and to prevent the recurrence of such violations. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988). A plaintiff is not automatically entitled to an injunction simply because it proves its affirmative claims, and generally must provide evidence that Defendants continue to sell goods bearing their trademark or that such behavior is likely to recur. Pyrodyne Corp. v. Pyrotronics Corp., 847 F.2d 1398, 1402 (9th Cir. 1988) ("[T]he grant of injunctive relief is not a ministerial act flowing as a matter of course."); see Pepsi-Co, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177-78 (C.D. Cal. 2002) (applying Friends of the Earth, Inc. v. Laidlaw Env. Sers. (TOC), Inc., 528 U.S. 167 (2000)).[3] Here, where there has been a long and substantial history of willful infringement, Defendants have exhibited a willingness to continue violating the registered trademarks. Moreover, "Defendants do not object to the issuance of an injunction in the form of an order forbidding it from 'selling or offering for sale counterfeit Versace merchandise or otherwise infringing on the trademarks of Plaintiff.'" (Opp. at 4.) In fact, as Defendants state in their opposition brief, this has been the consistent position of the Defendants throughout the various Pre-Trial Order drafts. Accordingly, the Court **GRANTS** Plaintiff a permanent injunction. Defendants are hereby **ENJOINED** from selling or offering for sale counterfeit Versace merchandise or otherwise infringing on the trademarks of Plaintiff.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment as to Defendants Monir Awada and Tres Hermanos' liability for trademark infringement, false designation of origin and unfair competition. The Court further finds Defendants' infringement was willful. The Court **GRANTS** Plaintiff the permanent injunction it seeks but defers the determination of statutory damages to a jury.

---

[3]In Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc., 528 U.S. 167 (2000), the Supreme Court stated that the standard for determining whether a case has become moot by the defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id. at 189 (quoting United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203 (1968)). The court further stated that "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Id. (internal quotations omitted).

EX-1- 19

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 20 of 49   Page ID
Case 2:03-cv-03254-GAF -RNB   Document 1603   Filed 09/04/09   Page 11 of 11   Page ID
#:8139
#:6004

LINKS: 1436-39

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 03-3254-GAF | Date | September 4, 2009 |
|---|---|---|---|
| Title | Gianni Versace v. Monir M. Awada, et al. | | |

    The Court is unable to determine the number of infringements at this time.  The parties
are **ORDERED** to meet and confer and jointly submit a chart to the Court, which is supported
by evidence and which indicates which types of goods infringed which Versace trademarks.  The
chart must be submitted on or before **Friday, September 18, 2009.**

    **IT IS SO ORDERED.**

EX-1- 20

# Exhibit 2

EX-2- 21

1  FELIPA R. RICHLAND, SBN 112458
2  **RICHLAND & ASSOCIATES**
   499 North Cañon Drive, 3rd Floor
   Beverly Hills, CA 90210
3  (323) 651-5951 - Telephone
   (323) 651-1088 - Facsimile
4  feliparichland@sbcglobal.net

5  Attorneys for Plaintiff,
   GIANNI VERSACE, S.p.A.
6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11  GIANNI  VERSACE,  S.p.A.,  a  Foreign )   CASE NO.: CV 03-3254 GAF (RNBx)
    Corporation,                          )
12                                        )   JOINT REPORT RE: TRADEMARK
                               Plaintiff, )   INFRINGEMENTS
13                                        )
                                          )
14                   -vs-                 )
                                          )
15                                        )
                                          )
16  **MONIR  M.  AWADA**,  an  Individual; )
    **MOHAMED BDAIR**, an Individual; **ALI** )
17  **CHAHINE**,  an  Individual;  **GINNO** )
    **CHAHINE**, an Individual; **MOHAMAD N.** )
18  **CHAHINE**,  an  Individual;  **NADER** )
    **CHAHINE**,  an  Individual;  **MOUSSA** )
19  **DAANA**, an Individual; **AKIL EL REDA**, an )
    Individual; **ALI  KHALIL  ELREDA**,  an )
20  Individual; **FIRAS MOHAMMAD FAKIH**, )
    an Individual; **ALI YOUSSEF FARHAT**, an )
21  Individual;  **HASSAN  MOHAMAD** )
    **FARHAT**, an Individual; **MOHAMAD ALI** )
22  **FARHAT**,  an  Individual;  **YOUSSEF M.** )
    **FARHAT**,  an  Individual;  **ALI  ADNAN** )
23  **GHACHAM**,  an  Individual;  **BASSAM** )
    **ADNAN   GHACHAM**,   an   Individual; )
24  **TAGRID   ADNAN   GHACHAM**,   an )
    Individual; **ALI DAOUD GHACHAM**, an )
25  Individual; **HUSSEIN DAOUD GHACHAM**, )
    an Individual; **MOHAMED GHACHAM**, an )
26  Individual; **OSSAMA DAOUD GHACHAM**, )
    an Individual; **RAMONA GONZALEZ**, an )
27  Individual;  **MAHMOUD H. HARB**,  an )   COMPLAINT FILED: May 9, 2003
    Individual; **MAHA ASSAAD JOMAA**, an )
28  Individual; **MOUSSA MATAR**, an Individual; )  TRIAL DATE: TBD

RICHLAND &
ASSOCIATES
ATTORNEYS AT LAW
BEVERLY HILLS

                          -1-

EX-2 - 22

1  HUSSEIN MOURAD, an Individual; SAMIR )
2  MOURAD, an Individual; YAMEL )
   MOURAD, an Individual; YOUNG JIN )
3  PARK, an Individual; ABDEL NABI SAAB, )
   an Individual; ALEX SAAB, an Individual; )
4  ALI HUSSEIN SAAB, an Individual; ALI )
   NAIM SAAB, an Individual; ELSA SAAB, an )
5  Individual; HASSAN SAAB, an Individual; )
   HUSSEIN YOUSSEF SAAB, an Individual; )
6  AHMAD M. SAAB, an Individual; TASHIN )
   SAAB, an Individual; YOUSEF SAAB, an )
7  Individual; AHMED KHALIL SALEH, an )
   Individual; HUSSEIN KHALIL SALEH, an )
8  Individual; MAHMOUD KHALIL SALEH, )
   an Individual; ABBAS SALEH SALEH, an )
9  Individual; ALI SALEH    SALEH, an )
   Individual; HASSAN SALEH SALEH, an )
10 Individual; HUSSEIN SALEH SALEH, an )
   Individual; NAJIBE SALEH SALEH, an )
11 Individual; ABBAS MAHMOUD SALEH, an )
   Individual; ALI SLEIMAN SALEH, an )
12 Individual; HUSSEIN ALI SALEH, an )
   Individual; MIRIAM S. SALEH, an )
13 Individual; MUSTAPHA ALI SALEH, an )
   Individual; AHMAD SALIM, an Individual; )
14 IKHLAS SALIM, an Individual; ANA )
   MARIA SANDOVAL, an Individual; JOSE )
15 G. SANDOVAL, an Individual; ALI M. )
   TEHFI, an Individual; KHALED TEHFE, an )
16 Individual; NAZIH TEHFE, an Individual; )
   AMA CASUALS, INC., a California )
17 Corporation; AWADA BROS, INC., a )
   California Corporation; AWADA )
18 BROTHERS, INC., a California Corporation; )
   THE BRAND NAME CONNECTION, )
19 INC., a California Corporation; CENSO )
   UNICO, INC., a California Corporation; )
20 DENIM PALACE, INC., a California )
   Corporation; GHACHAM, INC.,a California )
21 Corporation; HIP HOP CONNECTIONS, )
   INC., a California Corporation; JAVINCCI, )
22 LLC., a California Limited Liability )
   Corporation; LA BRAND NAME, INC., a )
23 California Corporation; LIMITED )
   CLOTHING, INC., a California Corporation; )
24 LOS HERMANOS, INC., a California )
   Corporation; MAS SPORTSWEAR, INC., a )
25 California Corporation; MGM TRADING, )
   INC., a California Corporation; MIRAGE )
26 CONNECTION, INC., a California )
   Corporation; NUEVA TIENDA, INC., a )
27 California Corporation dba NUEVA TIENDA; )
   SAAB & SONS CLOTHING, INC., a )
28 California Corporation; SAAB GROUP, INC., )
   a California Corporation; SPORT JEANS, )

RICHLAND &
ASSOCIATES
ATTORNEYS AT LAW
BEVERLY HILLS

-2-

EX-2-23

1 | INC., a California Corporation; **TRES** )
2 | **HERMANOS INC.**, a California Corporation; )
and **UNESCO JEANS, INC.**, a California )
3 | Corporation aka UNESCO, INC., and **CINCO** )
**DE MAYO, INC**, a California Corporation aka )
4 | 5 DE MAYO, INC., dba 5 de Mayo, Cinco de )
Mayo and Five de Mayo, Inclusive, )
5 |                                Defendants. )
6 | _____ )

7         Pursuant to this Court's Order of September 4, 2009, counsel for the parties

8 have re-examined the subject clothing comprising the "Group 'B'" goods as referenced and

9 designated in the Court's Order Granting MSJ (*in part*) and have agreed to jointly submit

10 to the Court the Summary of Trademark Infringements attached hereto as Attachment 'A'.

11         Accordingly, IT IS HEREBY STIPULATED as follows:

12         Attachment 'A' hereto is a true and accurate designation of each separately

13 identified trademark appearing on each of the nine (9) "categories" of goods as referenced

14 in the Court's 9/4/09 Order at pg. 8 of 11.

15         Defendants do not agree and do not stipulate that the number of separate

16 infringements identified in the chart correctly identifies the number of classes of goods for

17 the purpose of determining the number of infringements subject to statutory damages.

18         Defendants will submit a brief on how the number of infringements is to be

19 calculated. Plaintiff will respond.

20

21 DATED: September 18, 2009          GIANNI VERSACE, S.p.A.

22

23                          By:        /s/
24                                FELIPA R. RICHLAND, Attorney for
                                 Plaintiff GIANNI VERSACE, S.p.A.
25

26 DATED: September 18, 2009          KANE, BALLMER & BERKMAN, LLP.

27

28                          By:        /s/
                                 Bruce C. Gridley, Attorneys for Defendants
                                 MONIR AWADA
                                 TRES HERMANOS, INC.

RICHLAND &
ASSOCIATES
ATTORNEYS AT LAW
BEVERLY HILLS

-3-

EX-2- 24

# SUMMARY OF TRADEMARK INFRINGEMENTS

Page 4 of ATTACHMENT 'A'

[PER 8/31/09 ORDER GRANTING MSJ (IN PART)]

| TYPE OF GOOD | | | | | | EMBROIDERY | BUTTON | RIVET | SUB-TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| SHIRTS[1] | VERSACE | VERSACE JEANS COUTURE | | | MEDUSA | MEDUSA | | | 4 |
| L/S & DRESS SHIRTS[2] | VERSACE | VERSACE JEANS COUTURE | GIANNI VERSACE | | | MEDUSA | MEDUSA | | 5 |
| POLO SHIRTS[3] | | VERSACE JEANS COUTURE | GIANNI VERSACE | | | MEDUSA | | | 3 |
| LEATHER JACKETS[4] | | VERSACE JEANS COUTURE | GIANNI VERSACE | | | MEDUSA | | | 3 |
| JEANS[5] | VERSACE | VERSACE JEANS COUTURE | | VERSACE CLASSIC V2 | MEDUSA | MEDUSA | MEDUSA | MEDUSA | 7 |
| SWEATERS[6] | | VERSACE JEANS COUTURE | | | | | | | 1 |
| SUB-TOTAL | 3 | 6 | 3 | 1 | 2 | 5 | 2 | 1 | 23 |
| REG TM # | 2,121,984 | 2,426,052 | 1,891,546 | 2,387,508 | 1,725,686 | 2,078,918 | 2,078,918 | 2,078,918 | |

[1] Exhibit 'L' series

[2] Exhibits 'F' series, 'G' series, 'T' and 'K'

[3] Exhibits 'H' and 'J'

[4] Exhibits 'D' series and 'E' series

[5] Exhibits 'A' series, 'B' and 'C'

[6] Exhibit 'M'

ATTACHMENT 'A'

EX-2-25

# Exhibit 3

EX-3- 26

CLERK, U.S. DISTRICT COURT

MAY − 5 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIANNI VERSACE, S.p.A., | CASE NO.:  CV 03-3254- GAF |
| Plaintiff, | REDACTED SPECIAL VERDICT FORM |
| vs. | |
| MONIR M. AWADA, | |
| TRES HERMANOS, INC. | |

WE, THE JURY, in the above-entitled action, unanimously find and award statutory damages as follows:

| GOOD | MARK | DAMAGES |
|---|---|---|
| T-Shirt | Versace | 500,000 |
| T-Shirt | Versace Jeans Couture | 500,000 |
| T-Shirt | Medusa | 500,000 |
| T-Shirt | Medusa Embroidery | 500,000 |
| Dress Style Shirt | Versace | 1,000,000 |

1

Ex-3- 27

| | | |
|---|---|---|
| 1 | Dress Style Shirt | Versace Jeans Couture | 1,000,000 |
| 2 | Dress Style Shirt | Gianni Versace | 1,000,000 |
| 3 | Dress Style Shirt | Medusa Embroidery | $ 1,000,000 |
| 4 | Dress Style Shirt | Medusa Buttons | 1,000,000 |
| 5 | Polo Style Shirt | Versace Jeans Couture | 1,000,000 |
| 6 | Polo Style Shirt | Gianni Versace | 1,000,000 |
| 7 | Polo Style Shirt | Medusa Embroidery | 1,000,000 |
| 8 | Leather Jacket | Versace Jeans Couture | 1,000,000 |
| 9 | Leather Jacket | Gianni Versace | 1,000,000 |
| 10 | Leather Jacket | Medusa Embroidery | 1,000,000 |
| 11 | Jeans | Versace | 1,000,000 |
| 12 | Jeans | Versace Jeans Couture | 1,000,000 |
| 13 | Jeans | Versace Classic V2 | 1,000,000 |
| 14 | Jeans | Medusa | 1,000,000 |
| 15 | Jeans | Medusa Button | 1,000,000 |
| 16 | Jeans | Medusa Rivet | 1,000,000 |
| 17 | Sweater | Versace Jeans Couture | 1,000,000 |

Dated: MAY 5, 2010

REDACTED VERDICT FORM AS TO FOREPERSON SIGNATURE

PRESIDING JUROR

2

EX-3-28

# Exhibit 4

EX-4-30

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
| Title | Gianni Versace v. Monir M Awada, et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| None | | None |

**Proceedings:**       **(In Chambers)**

<u>**ORDER RE: GROUP A GOODS**</u>

    Defendants filed a motion for summary judgment with respect to the remaining issues in this case. Plaintiff opposed. However, Defendants have acknowledged that, because the parties have agreed that the case may be tried to the Court, the record is sufficient for the Court to resolve all issues without further proceedings. Plaintiff has opposed the motion and submitted evidence on all of the issues now before the Court. The Court agrees that no further evidence is necessary to decide this case.[1] Accordingly, the Court conducted a hearing on the issues for resolution and took the matter under submission. The following sets forth the Court's ruling on the Group A issues in this case.

**A. INTRODUCTION AND BACKGROUND**

    On June 7, 2003, pursuant to an order issued by the United States District Court, a coordinated series of seizures occurred at 19 different Tres Hermanos stores, which were owned and operated by Defendant Monir Awada. Approximately 15,000 items were seized: 11,000+ that were later designated as the Group A items and approximately 4,000 items, designated by

---

[1] All previous findings by the Court regarding the Group B goods, the stipulations of the parties, the Statement of Proven Facts presented at the damages trial regarding the Group B goods, and the jury's findings regarding the imposition of statutory damages with respect to the Group B goods are incorporated by this reference. Likewise, the Court incorporates by this reference all pre-trial orders and all rulings on prior motions for summary judgment issued in this lawsuit. The Court makes additional findings in the discussion below.

EX-4- 31

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 31 of 49   Page ID
Case 2:03-cv-03254-GAF -RNB   Document 1624   Filed 03/02/11   Page 2 of 18   Page ID
#:9640
#:7837

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
|---|---|---|---|

| Title | Gianni Versace v. Monir M Awada, et al |
|---|---|

the parties as "Group B" items.  The Group A items bear allegedly infringing Versace "Medusa" marks; the Group B items bore allegedly infringing Versace trademarks consisting of various uses of the Versace name and/or the Versace Medusa marks.

For reasons not important at this stage of the proceedings, the Court addressed the Group B goods first.  After the Court summarily adjudicated the issues of liability and willfulness in favor of Versace with respect to the Group B goods, the only issue that remained for resolution was the award, if any, of statutory damages.  Because statutory damages are awarded "per counterfeit mark per type of goods . . . sold," 15 U.S.C. § 1117(c), the Court further determined that the Group B goods consisted of six "types" of goods, that some types involved infringement of more than one mark, and that there were a total of 22 infringements at issue.  The question of the damage award was determined through a jury trial demanded by the defendant.  The jury awarded maximum statutory damages of $1,000,000 each with respect to 18 of the infringements.  The jury's total damage award was $20 million.

The parties have now agreed to try the liability and damages issues as to the Group A goods to the Court.  To facilitate that trial, the parties have stipulated to certain facts, which are discussed below, and further stipulated to a cap of $100,000 in statutory damages for any further infringements.

The parties have now essentially presented the Court with what amounts to a stipulated facts trial.  In that regard, the Court will admit into evidence the following exemplar items filed with the Court: one sweater, 11 shirts and 7 jackets, (Docket No. 1604) (Exs. 605, 606, 608-610, 613-14, 616A, 616B, 617, 622, 622A-F, 627, 628), and 8 belts.  (Id.) (Exs. 701 through 708)  The Court also considered evidence submitted through declarations to the extent discussed below.   Through the declarations, documentation, and physical exhibits, the Court is asked to resolve the following issues:

(1) The types of goods included within Group A;

(2) Whether any of those types of goods infringe on either of Versace's registered "Medusa" marks bearing registration numbers 1,725,686 ("the '686 mark") and/or 2,078,918 ("the '918 mark");

(3) To the extent that such infringements were found with respect to the Group B goods, whether an additional recovery can be achieved with respect to Group A goods.

The following sets forth the Court's findings and conclusions regarding the Group A

EX-4-32

Case 2:03-cv-03254-GAF-RNB  Document 1638  Filed 08/30/11  Page 32 of 49  Page ID
LINK:
Case 2:03-cv-03254-GAF -RNB   Document 1624   Filed 03/02/11  Page 3 of 18  Page ID
#:7838
#:8624

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   CV 03-03254 GAF (RNBx)                Date   March 2, 2011

Title      Gianni Versace v. Monir M Awada, et al

goods.

## B. STIPULATED FACTS

Prior to the filing of the pending motions, the parties submitted stipulations of fact relating to the Group A goods.  Based on the stipulation of the parties, the Court concludes that the following facts are not in dispute with respect to the Group A goods:

1. Attachment A to this order identifies goods that were seized from Tres Hermanos stores on or about June 7, 2003.  These goods have been identified by the parties to this litigation as goods encompassed within the Group A goods.  Attachment A groups the seized goods by categories, identifies the number of goods within each category, and identifies the allegedly infringed Versace trademarks utilized on goods within that category.  Group A consists of a total of 11,741 separate items. [**NOTE**: Despite the organization of the goods and marks in the Attachment, the parties have left open issues regarding whether cloth jackets and leather jackets constitute separate types of goods for statutory damages purposes, whether knit tops are a separate type of good, and whether statutory damages can be awarded for an infringement of a particular mark where such an award was made with respect to the same mark for the same type of good within Group B.  These issues are all addressed below.]

2. The following goods, pursuant to the stipulation of the parties, are counterfeit Versace goods bearing purported Versace trademarks:  94 pairs of sunglasses, 6 watches, 206 wallets.  Those goods infringe the Versace marks associated with the goods as identified in Attachment A.[2]

3. The following items listed in Attachment A each bear a depiction of a mark that allegedly infringes one or more of Versace's registered "Medusa" marks, bearing registration numbers 1,725,686 and/or 2,078,918: 1,550 belts, 252 leather and cloth jackets, and 9,633 shirts, sweaters and knit tops.

4. With respect to the 9,633 shirts, sweaters and knit tops, 1,070 (11.1%) of those garments utilize 14 different Medusa-style marks that the parties have identified as S1, S2, S3,

---

[2] The Court notes that the parties' stipulation (Docket No. 1582) may contain an error as it identifies the same registration number – Reg. No. 1,725,686, for VERSACE and MEDUSA.  (Docket No. 1582, at 3 ll. 21-22.)  If so, the parties should notify the Court so that this order may be amended.

EX-4- 33

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 33 of 49   Page ID
Case 2:03-cv-03254-GAF -RNB   Document 1622   Filed 03/02/11   Page 4 of 18   Page ID
#:7839

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
| Title | Gianni Versace v. Monir M Awada, et al | | |

S4, S5, S7, S8, S11, S12, S15, S18, S19, S20, and S21, and that the parties stipulate are
infringing.

     5. In addition to the foregoing facts, the parties have stipulated that the statutory damages
should be capped at $100,000 per mark per type of infringing good.

**C. DISCUSSION**

### 1. Double Recovery

     The Court first addresses a question raised in the submissions to the Court regarding the
ability of Versace to recover for additional infringements in categories of goods that were the
subject of the Group B trial. The parties present arguments that are confusing, unsupported by
authority and not entirely on point. Defendants appear to argue that, to the extent that Group A
goods include types of goods that were within Group B and that have been the subject of a
damage award following the Group B damages trial, no further award should be permitted
because of the potential unfairness that would result from the Court's bifurcation of issues.
Versace, on the other hand, seems to argue that the Court can impose damages with respect to
the Group A goods without reference to Group B, and, if necessary, make an adjustment later to
avoid an award that would be above the statutory cap. Parrish v. Sollecito, 280 F. Supp. 2d 145,
155 (S.D.N.Y. 2003). Neither party presents any authority that addresses the question either
directly or by implication.

     The Court has attempted to find such authority and has found none. Accordingly, the
Court refers back to the statutory language. The Lanham Act provides, in pertinent part, that
under circumstances such as those presented in this case:

> the plaintiff may elect, at any time before final judgment is rendered by the trial
> court, to recover, instead of actual damages and profits under subsection (a) of this
> section, an award of statutory damages for any such use in connection with the
> sale, offering for sale, or distribution of goods or services in the amount of--
>
> > (1) not less than $1,000 or more than $200,000 *per counterfeit mark per
> > type of goods or services sold*, offered for sale, or distributed, as the court
> > considers just;

15 U.S.C. § 1117(c) (emphasis added). The Court construes this language to mean this: if a
defendant sells counterfeit Versace dress shirts bearing a given registered trademark, Versace

EX-4-34

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 34 of 49   Page ID
Case 2:03-cv-03254-GAF -RNB   Document 8343   Filed 03/02/11   Page 5 of 18   Page ID
#:7840

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
|---|---|---|---|
| Title | Gianni Versace v. Monir M Awada, et al | | |

can obtain one statutory damage award for that infringement even if the dress shirts are divided into different groups for trial management purposes.[3]  In short, the Court finds no support in the statute or logic that would permit an order of bifurcation to be used as a means of allowing a double recovery for an infringement of a given trademark for a given type of goods. Accordingly, in its discussion below, the Court seeks to identify, with respect to each type of good, the marks for which no award has yet been made.  This will prevent Versace from receiving a double recovery of statutory damages.

### 2. *Categorization of Goods*

The question of categorizing goods to determine the number of infringements for purposes of determining an award of statutory damages has already been addressed in this case. In assessing this question with respect to Group A goods, the Court reiterates its earlier ruling harmonizing the broad "functional purpose test" set forth in Gucci America, Inc. v. MyReplicahandbag.com, 2008 WL 512789 (S.D.N.Y. Feb. 26, 2008), which viewed shirts of all types as one category of goods, with cases establishing a narrower test like Nike, Inc. v. Variety Wholesalers, Inc., where the Court recognized a sweatshirt as a different type of good than a shirt.  274 F. Supp. 2d 1352, 1374 (S.D. Ga. 2003), affirmed by 107 Fed. Appx. 183 (11th Cir. 2004); see also Nike, Inc. v. Top Brand Co., 2006 WL 2946472, at *3 (S.D.N.Y. Feb. 27, 2006) (treating t-shirts, sweatshirts and polo shirts as three different types of goods).  Ultimately, the Court applied a modified functional purpose test that took into account Plaintiff's authorities that allowed for a more nuanced categorization of goods.  However, as the Court noted, Plaintiff took the analysis to the extreme by arguing that virtually any variations in a product's size, shape, color, pattern or fabric would be a proper basis for establishing a category of goods for purposes of determining the number of infringements of its registered trademarks.  The Court rejected that approach, but in its determination of the number of infringements, did conclude, for example, that dress shirts, T-shirts and polo shirts were different categories of goods.  The Court applies the same test here with respect to the Group A goods.

### (a) Sweaters, shirts and knit tops

Sweaters:  There appears to be no dispute that the sweater category is identical to the

---

[3] For example, if in the Group B trial Versace  received a statutory damage award for dress shirts that infringed the '918 mark, no further damages will be awarded for that infringement with respect to dress shirts. However, if the Group A dress shirts infringe a mark for which an award has not been made, then the Group B determination does not preclude an additional award of statutory damages as to that mark.

EX-4- 35

Case 2:03-cv-03254-GAF-RNB  Document 1638  Filed 08/30/11  Page 35 of 49  Page ID
Case 2:03-cv-03254-GAF -RNB  Document 1624  Filed 03/02/11  Page 6 of 18  Page ID
#:7841
#:7841

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
|---|---|---|---|
| Title | Gianni Versace v. Monir M Awada, et al | | |

sweater category that was the subject of the Group B trial.  The parties agree that, if the sweaters in Group A are infringing, they infringe the '686 mark.  Because the Group B sweaters did not infringe this mark, additional statutory damages can be awarded if the Medusa mark has been infringed.

    Shirts:  Plaintiff concedes that the Group A shirts include dress shirts, polo shirts, and T-shirts.  Plaintiff does, however, argue that "knit tops" constitute a different type of infringing good and that it is entitled to recover damages for the two marks that have been infringed.  The Court addresses that contention below.

    With respect to dress shirts, polo shirts and T-shirts, the Court concludes that no additional infringement should be found with respect to the Medusa '918 mark.  In the Group B trial, the jury found and awarded damages for the infringement of that mark with respect to embroidery that appeared on T-shirts, dress shirts and polo shirts.  Furthermore, the jury found infringement of the Medusa '686 mark with respect to T-shirts.  Accordingly, with respect to shirts, the only additional infringement for which Plaintiff may recover, if the mark is infringing, would involve an infringement of the '686 mark with respect to dress shirts and polo shirts.

    Knit tops:  Following the approach taken in assessing the Group B goods, the Court agrees with Versace's analysis of knit tops and is persuaded that because of their different construction, differences in the way they fit, differences in their design, and differences in their intended use, they constitute a different category than dress shirts, polo shirts and T-shirts.  The Court further notes that the parties have agreed that, if the knit tops infringe, they infringe on the '686 mark.

    Accordingly, if there are infringements that would support an additional award of statutory damages from the sweaters, shirts and knit tops group, they would be the following: (1) sweaters ('686 mark); (2) polo shirts ('686 mark); (3) dress shirts ('686 mark); (4) knit tops ('686 mark).

    (b) Cloth Jackets

    Based on the reasoning in its prior order, the Court rejects Versace's contention that the Group A cloth jackets do not perform the same function as the Group B leather jackets.  For example, Versace notes that a number of the leather jackets have additional lining for added warmth.  However, the Court is not persuaded that the weight of an outerwear item necessarily determines the category into which a jacket should be placed.  Such an analysis would potentially create an unlimited number of categories for jackets that perform essentially the same function.

    Moreover, Versace again presents the argument that the fabric makes the garment in its

EX-4- 36

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 36 of 49   Page ID
Case 2:03-cv-03254-GAF-RNB   Document 1625   Filed 03/02/11   Page 7 of 18   Page ID
#:7842

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
|---|---|---|---|
| Title | Gianni Versace v. Monir M Awada, et al | | |

claim that cloth jackets are to leather jackets "what T-shirts are to dress shirts." That is an interesting and notably inapt analogy. Marlon Brando and James Dean are featured in iconic photographs wearing leather jackets open to reveal T-shirts underneath. Nevertheless, Versace persists in the argument by asserting, in comparing a coat dress to a wedding dress, "but what makes them different is the fabric." (Mem. at 7.) Really? In the Court's view, the functional difference of the two garments have much less to do with fabric and much more to do with the context in which they are worn. Moreover, if accepted, the argument would support a claim that a cashmere sweater, a merino wool sweater and a cotton sweater, which vary radically in price and sophistication but not function, constitute different types of goods. As noted above, the Court has already rejected such an approach. Accordingly, the Court concludes that cloth jackets do not constitute an additional category of good for purposes of determining the number of infringements.

Furthermore, consistent with the Court's view on double recovery set forth above, the Court concludes that Versace cannot obtain a further damage award for infringement of the '918 mark. The Group B jury already found infringement of the '918 mark and awarded maximum statutory damages for the infringement with respect to leather jackets. Hence, since leather and cloth jackets are a single category, no further award is appropriate with respect to the '918 mark. Any award would be limited to infringement of the '686 mark.

### (c) Belts and Buckles

Group A includes 1,550 leather belts with eight different metal belt buckles that bear a Medusa design as a decorative adornment. The eight different designs are depicted in the parties Supplement No. 1 to Pre-Trial Conference Order re Group A Goods in photographs identified as B1 through B8. Additional photographs of the belts are set forth in Exhibits 36 to 42 of the Stein Declaration. These photographs depict additional Medusa medallions that appear on the belts. The Court views the buckles as an integral part of the belts and that they comprise a single category of good. Subject to proof, the Court concludes that belts and buckles could support infringements of the '686 and '918 marks.

### (d) Summary of Infringements

Based on the foregoing, the Court concludes that the infringements at issue with respect to Group A goods are the following:

EX-4- 37

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 37 of 49   Page ID
#:8146
Case 2:03-cv-03254-GAF -RNB   Document 1624   Filed 03/02/11   Page 8 of 18   Page ID
#:7843

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
| --- | --- | --- | --- |
| Title | Gianni Versace v. Monir M Awada, et al | | |

| Category of Good | Allegedly Infringed Mark |
| --- | --- |
| Sunglasses | Versace – '272 mark<br>Medusa – '686 mark |
| Watches | Versace – '272 mark<br>Medusa – '093 mark |
| Wallets | Gianni Versace – '270 mark<br>Versace – '984 mark<br>Medusa – '686 mark |
| Belts | Medusa – '686 mark or<br>Medusa – '918 mark |
| Jackets | Medusa – '686 mark |
| Dress Shirts | Medusa – '686 mark |
| Sweaters | Medusa – '686 mark |
| Polo shirts | Medusa – '686 mark |
| Knit tops | Medusa – '686 mark |

In short, the Court concludes that there are 14 alleged infringements that must be resolved
in this portion of the trial.  Furthermore, the Court concludes, based on the parties stipulations,
that 7 of the 14 have been established through the parties' stipulation that the sunglasses,
watches, and wallets are counterfeit Versace goods.  Accordingly, the Court must determine:

(1) whether the Medusa images used on the belts, jackets, dress shirts, polo shirts, and
sweaters infringe on the Versace marks;

(2) whether those marks are properly considered "counterfeit" marks within the meaning
of the Lanham Act; and

(3) if both are resolved in favor of Versace, determine the amount of statutory damages to
be awarded.

EX-4- 38

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 38 of 49   Page ID
Case 2:03-cv-03254-GAF-RNB   Document 1624   Filed 03/02/11   Page 9 of 18   Page ID
#:7844

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
|---|---|---|---|
| Title | Gianni Versace v. Monir M Awada, et al | | |

### 3. *Infringement of the Medusa Marks*

The question of infringement as to the Group B goods was not contested by defendants. Likewise, they do not contest the issue of infringement with respect to the seven uses described above. However, seven additional alleged infringements are at issue and must be resolved before the Court can address the damages question.[4]

Section 32(1) of the Lanham Act proscribes using in commerce any "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale . . . of any goods or services" that is likely to deceive or cause confusion among consumers. 15 U.S.C. § 1114(1)(a). See, e.g., Variety Wholesalers, 274 F. Supp. 2d at 1367. "A counterfeit mark is defined as 'a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.'" (Quoting 15 U.S.C. § 1127.)" Id.

Here there is no dispute that Versace owns the Medusa marks at issue, that the Medusa marks have long been registered, and that the Medusa designs used by Defendants were used without Versace's authorization. Accordingly, the Court must focus its attention on the third element, "'likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products.'" Freecycle Network, Inc. v. Oey, 505 F.3d 898, 902 (9th Cir. 2007) (quoting Abercrombie & Fitch Co. v. Moose Creek, Inc., 486 F.3d 629, 633 (9th Cir. 2007)); Brookfield Commc'ns, Inc. V. West Coast Entm't Corp., 174 F.3d at 1036, 1053 (9th Cir. 1999). Courts in the Ninth Circuit apply eight non-exclusive factors to determine likelihood of confusion: (1) the strength of the mark; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care the purchaser is likely to exercise; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir. 1979), abrogated on other grounds as recognized in Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 810 n.19 (9th Cir. 2003). "Some factors are much more important than others, and the relative importance of each individual factor will be case-specific." Brookfield, 174 F.3d at 1054. "Other variables may [also] come into play depending on the particular facts presented." Sleekcraft, 599 F.2d at 348 n.11. The Court considers each factor below.

---

[4] Defendants emphasized at the March 1, 2011 hearing on the Group A goods that the Medusas on the belts and buckles do not infringe because, in their transformation to a three-dimensional image, so much detail was lost that they cannot be associated with the two dimensional Versace Medusas found on the principal register. However, an examination of Exhibits 701 through 708 reveals a significant amount of detail in the images. Thus, the Court rejects that argument as a basis for any argument that the images are non-infringing.

Ex-4-39

Case 2:03-cv-03254-GAF -RNB   Document 1624   Filed 03/02/11   Page 10 of 18   Page ID #:7845

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
|---|---|---|---|
| Title | Gianni Versace v. Monir M Awada, et al | | |

(a) Similarity of the Marks[5]

The Court's review of the evidence establishes that the spurious marks are materially indistinguishable from the registered marks. First, as noted above, the parties have stipulated that 14 of the Medusa designs (S1, S2, S3, S4, S5, S7, S8, S11, S12, S15, S18, S19, S20, and S21) used on the shirts, sweaters and knit tops are infringing. Although those designs appear on only 11% of the items in those categories, that would seem to be sufficient to support an award of statutory damages. Furthermore, the Court has examined images S6, S9, S10, S13, S14, S16 and S17 (see, e.g., Attachment A; Docket Nos. 1613 and 1614). Exhibits 605, 606, 608, 613, 616B, 617, and 627 contain four different Medusa images that are so similar to the Versace marks that they appear indistinguishable from the '686 and/or the '918 Medusa marks. These marks are found on many of the dress shirts, polo shirts, knits and sweaters. Likewise, the Medusa images found on the belt buckles and decorative medallions are all quite similar to Versace's registered images. (See, e.g., Exhibit 504-5; Exs. 701-08.)

Given the stipulations and findings from the Group B trial, Defendants claim that the contested marks are readily distinguishable merits little discussion. The Court has compared the images at issue in Group B and finds little difference between the counterfeit Group B images and those at issue in the Group A goods. Morever, Versace correctly notes that slight additions or modifications of the marks (e.g., the embroidered border on image S6), slight modifications to the eyes, mouth and nose (e.g., images S9, S10 and S14) and the use of shading (image S13) will not defeat a claim of similarity. (See also Memorandum in Opposition to Motion for Summary Adjudication – Part 2 (Liability), at 17-20 regarding similar images used on jackets and belts). Roulo v. Russ Berrie & Co. Inc., 886 F.2d 931, 937 (7th Cir. 1989), cert. denied 493 U.S. 1075 (1990) (slight differences that are easily overlooked will not defeat a claim of trademark infringement). Accordingly, having reviewed the evidence and compared the registered and allegedly infringing marks, and having further compared them with marks already found to be infringing counterfeits, the Court finds them virtually indistinguishable. The Court therefore views the allegedly infringing Medusas to be counterfeits of the registered mark.

(b) The Proximity of the Goods

---

[5] The Court notes that Defendants have submitted the declaration of Mr. Stein who has examined the competing marks and opined regarding their differences. Versace's opposition memorandum (Docket No. 1612, at 31-32), points out the numerous errors in Mr. Stein's declaration (e.g., the incomprehensible assertion that Versace's Medusa is female while the Defendants' Medusas are male.) The Court agrees and gives the declaration no weight. The Court again reiterates that minor variations in the infringing images cannot be used to defeat a trademark claim where those variations would be easily overlooked if the images were laid side by side.

Ex-4-4b

Case 2:03-cv-03254-GAF-RNB  Document 1638  Filed 08/30/11  Page 40 of 49  Page ID
#:8149
Case 2:03-cv-03254-GAF -RNB  Document 1624  Filed 03/02/11  Page 11 of 18  Page ID
#:7846
LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
|---|---|---|---|
| Title | Gianni Versace v. Monir M Awada, et al | | |

As noted in <u>Sleekcraft</u>, "[f]or related goods, the danger presented is that the public will
mistakenly assume there is an association between the producers of the related goods, though no
such association exists." 559 F.2d at 350. In this case, that is a particularly critical element. The
allegedly infringing Medusas are being used on precisely the same types of goods on which
Versace uses the marks. Indeed, Versace correctly notes that some of the Medusas are used in
context with phonetically similar word marks, which further increases the risk of confusion. The
Court saw and heard substantial evidence during the Group B trial regarding the use of the
various marks, the importance of those marks to Versace, the expenditure of substantial sums
advertising the marks, and the problems that can arise when a seller of cheap knock offs uses a
facsimile of a famous mark. This factor strongly suggests that the use of the Medusa image on
clothing and fashion accessories creates a substantial risk of confusion.

(c) <u>Marketing Channels</u>

This factor also supports a finding of confusion. Here the goods at issue are, in at least
some cases, marketed through identical retail channels in the same geographical area. The
evidence presented in the Group B trial established that Defendants had actually had a contract
with Versace at one time to market certain lines of its garments. The sale of genuine and
counterfeit Versace goods to the same customer base readily supports the Court's view that
Defendants' use of the Medusa mark creates a likelihood of confusion.

At the Group A hearing, Defendants argued that Versace does not use the Medusa mark as
part of its marketing of the Versace line. In support, Defendants cite to the second Londre
Declaration and Exhibit 3 attached thereto. Mr. Londre stated in his deposition that, although
Santo Versace has presented evidence in his declaration regarding the expenditure of funds to
market the Medusa mark, Londre is of the opinion that his declaration "does not assist in
determining if there has been advertising expenditure on promoting the medusa image as an
identifier of Versace goods." (Docket No. 1621, at ¶ 4.) Mr. Londre then cites to a website that
purportedly shows that in certain Versace ad campaigns featuring well known models Versace
did not use the medusa image. However, Mr. Londre points only to certain ad campaigns and
does not pretend to provide a comprehensive review of all Versace advertising. Second, as
Versace notes, the Medusa is not associated with all of Versace's product lines. Third, Versace
notes that if one looks carefully at the ads one can identify the presence of the Medusa mark (the
Court can see it on the purse in one of the Madonna ads). Fourth, when the Court conducted its
own internet search of the Versace/Madonna ad campaign, the Court readily identified Medusas
on a belt buckle and on a pair of sunglasses. In short, Santo Versace, in both declaration and at
the Group B trial, has testified to the substantial expenditures in marketing all of Versace's
marks, and Mr. Londre's declaration ultimately does nothing to undermine that testimony.

EX-4-41

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 41 of 49   Page ID
#:8450
Case 2:03-cv-03254-GAF -RNB   Document 1624   Filed 03/02/11   Page 12 of 18   Page ID
#:7847
LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
| Title | Gianni Versace v. Monir M Awada, et al | | |

### (d) Defendants' Intent in Using the Mark

Given the evidence that this Court has reviewed and discussed in its prior rulings, there is little question that Defendants used all of the Versace marks for the purpose of trading off its goodwill and palming off cheaper goods as Versace merchandise. Had the Defendants used only the Medusa design, such an inference might have been more difficult to draw. However, the use the Versace, Gianni Versace, Versace Jeans Couture, and Versace Classic V2 places the use of the Versace Medusa in context. There can be no doubt that Defendants deliberately sought to benefit themselves economically by using both the Versace word marks and the registered Medusa marks.

### (e) The Strength of the Mark

The Supreme Court has held that a trademark's strength turns on whether it is classified as (1) arbitrary or fanciful; (2) suggestive; (3) descriptive; or (4) generic. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). Arbitrary and fanciful marks are considered inherently distinctive, stronger, and therefore more readily subject to trademark protection. Id. at 766-69. Because the Medusa mark has been arbitrarily applied to a category of goods in a way that is not descriptive, the Court has already concluded that the Medusa marks are arbitrary or fanciful. Furthermore, the Medusa marks, which have long been registered and have been in constant use for decades, are without question valid and incontestable marks and, as such, are presumed to have secondary meaning. Miss World (UK) Ltd. v. Mrs. America Pageants, Inc., 856 F.2d 1445, 1448 n.4 (9th Cir. 1988) ("Secondary meaning refers to the consumer's mental association of the mark with the source of the product."); 15 U.S.C. § 1115(b). The evidence presented through stipulation that the marks are famous and distinctive, the evidence presented at the Group B trial that Versace has expended millions of dollars in the United States to develop the Medusa mark and associate it with Versace merchandise, all support the conclusion that the Medusa is a strong mark.

Defendants attack the strength of the Versace Medusa mark through expert testimony.[6] They present evidence in support of their expert's claim that the Medusa has no association with Plaintiff's garments in the absence of the word "Versace" or "Gianni Versace," and therefore that

---

[6] Although the declaration seemed primarily focused on the question of strength, it also seemed in part to address the question of the similarity of the marks. Thus, the Court's discussion in the text also bears to some extent on the similarity element.

EX-4-42

Case 2:03-cv-03254-GAF-RNB  Document 1638  Filed 08/30/11  Page 42 of 49  Page ID
#:8151
Case 2:03-cv-03254-GAF -RNB  Document 1624  Filed 03/02/11  Page 13 of 18  Page ID
#:7848

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
|---|---|---|---|
| Title | Gianni Versace v. Monir M Awada, et al | | |

its use with Defendants' purported marks (e.g., Patrini) would not likely confuse anyone.
(Londre Decl. ¶¶ 6, 14.)  In the Defendants' view, the absence of Versace and the presence of
additional words with the non-word mark negates the claim that anyone would confuse the
Medusas with marks associated with Versace.  (Id.)  This is in part based on the expert's
assumption that the words used on the Tres Hermanos garments are themselves "strong marks,"
(Id. ¶¶ 7-8.)[7]  The expert also presents a confusing argument that suggests that the Medusa would
be viewed as a generic "goddess" image (Id. ¶¶ 6, 8, 10), that most people would not be able to
identify the goddess (Id. ¶ 6, 11), and, therefore, that the Medusa would not be associated with
Versace.  The expert also contends that variations in the allegedly infringing Medusas defeats a
claim of infringement because "there is no universal, one image or one strong, defined depiction
that would be recognizable by the general public."  (Id., ¶ 13.)  Finally, the expert has conducted
no survey, so he instead relies on a shopping trip to Neiman Marcus where he spoke with a sales
person (whose age, education, training and experience are not recorded in the declaration) and,
based on that conversation, concluded that the Medusa image is not strongly linked to Versace
because this sales person did not make that connection.

Although the Court will not strike the declaration as Versace requests, the declaration is
not entitled to significant weight.   The expert's opinion contains the conclusory statement that
the opinions are based on his "own research" and that there is "a sufficient factual basis to be
reliable and the opinions are based on generally accepted principles in the fields of my expertise."
(Id. ¶ 2.)  However, the research is not described with any particularity, the principles on which
the opinions are based are not revealed, and the "factual basis" remains unknown.  Without such
information, the opinion is of little value.

These fundamental defects undermine the specific opinions offered by the expert.  For
example, the implication that the Tres Hermanos marks are themselves "strong marks" is not
backed up with supporting data.  In the absence of such data, the Court is not persuaded that the
Medusas used in connection with Defendants' word marks would generally be viewed as nothing
more than a "design element."  Indeed, the use of the two elements together creates the potential
for the kind of confusion that trademark law prohibits.  Furthermore, the fact that members of the
public (including college students) may not be familiar with the so-called "goddess" concept or
may not be able to identify the Medusa by name does not logically require the conclusion that the

---

[7] This appears to be part of Defendants' contention that infringement must be based on "impression as a
whole." McNeil Nutritional, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 359-61 (3rd Cir. 2007).  McNeil
is not persuasive, however, because it is a trade dress case, which establishes a different test for confusion – "the
overall impression when viewed separately." Id., at 359.  The proper test is one that compares the registered mark
against the allegedly infringing mark under the Sleekcraft test.

EX-4-93

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
|---|---|---|---|
| Title | Gianni Versace v. Monir M Awada, et al | | |

Medusa mark would not be associated with Versace. As Plaintiff correctly notes, it is unlikely that the general public can identify the mythological origins of Nike (the winged Greek goddess of victory celebrated in a famous sculpture displayed in the Louvre) but one knows without asking that they associate the name with athletic shoes and equipment. Further, the argument that Defendants' use of the Medusa in connection with their purported word marks somehow extinguishes Versace's trademark rights in the Medusa proves too much. If accepted, one could avoid a trademark claim by copying an established non-word mark and connecting it up with any name other than the true owner and defeat a claim of infringement. A maker of running shoes could, for example, place the name Gridley on a tennis shoe bearing the Nike swoosh and thereby insulate itself against a trademark lawsuit. Plainly, trademark law does not contemplate such a result. With respect to the comment regarding variations in the Medusa designs, this is a typical tactic of infringers; such slight variations will not defeat an infringement claim. Roulo, 886 F.2d at 937. Finally, a single conversation with an unidentified sales person is plainly insufficient to prove that consumers do not connect the Medusa mark with Versace.

(f) Evidence of Actual Confusion/Degree of Care Exercised by Purchasers

Because of the way that this lawsuit was commenced – through the seizure of thousands of counterfeit garments – there has been no direct evidence regarding the actual confusion of consumers who purchased goods from Defendants. However, one has some difficulty in ignoring the irony in the defense argument that confusion has not been shown. Plainly, the extensive and blatant use of the Versace marks on thousands of counterfeit goods had an objective, and what that might have been, if not to confuse the consuming public, one can only guess. Nevertheless, the Court notes that there is no direct evidence of actual confusion in this case. However, given the substantial weight that the Court gives to the other Sleekcraft factors, this fact does not alter the Court's analysis.

(g) Conclusion

For the foregoing reasons, the Court concludes that the Medusa images found on the Group A garments were sufficiently similar to the genuine Versace marks to constitute counterfeit marks, that they created a likelihood of confusion, and that the claim of trademark infringement has been established. The Court must therefore turn to the damages question.

*4. Damages*

There is little guidance in the case law as to the computation of statutory damages in a trademark case. As one district court observed:

EX-4- 44

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 44 of 49   Page ID
#:8153
Case 2:03-cv-03254-GAF -RNB   Document 1624   Filed 03/02/11   Page 15 of 18   Page ID
#:7850

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
|---|---|---|---|

| Title | Gianni Versace v. Monir M Awada, et al |
|---|---|

However, courts have found some guidance in the caselaw of an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides statutory damages for willful infringement. [Citations.] Under the Copyright Act, courts look to factors such as: (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant."

Gucci America, 2008 WL 512789, at *2, quoting Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., 807 F.2d 1110, 1117 (2d Cir.1986).

As noted in a number of prior proceedings, in this case it would be extremely difficult to determine expenses saved and profits to Defendants. As to lost revenues, the Court doubts that Defendants' conduct had much impact on Versace because they were selling cheaply made knock-offs to persons who, in the normal course of events, probably would not have been customers for genuine Versace goods because of their price. The Court has previously noted the importance of deterrence and the willfulness of Defendants' conduct in the sale of Versace counterfeits. The Defendants were not particularly cooperative in providing records or valuing the goods at issue; indeed, Monir Awada made himself unavailable to complete his deposition or for trial. Finally, given Awada's prior involvement in counterfeiting lawsuits, the Court doubts that any award in this case is likely to discourage him from further misconduct if it suits his momentary needs.

In addition, the Court takes into account the fact that the award in this case is already very large given the jury's verdict as to the Group B goods. The Court also takes into account the number of infringing items in a given category. For example, only 94 pairs of sunglasses and 6 watches were identified as bearing counterfeit marks. Only two sweaters were found bearing counterfeit marks. Although the number of infringing jackets was relatively small, they tend to be more expensive and more profitable items. On the other hand, several thousand shirts bore counterfeit Versace marks. The Court also takes into account that, while there could be no defense to the use of the Versace name or other word marks which justified a much higher award in that case, there is much less culpability associated with the use of an image that has its origins in antiquity.

Taking all of these factors into account, the Court concludes that the following award is appropriate for the Group A goods:

EX-4-45

Case 2:03-cv-03254-GAF -RNB   Document 1624   Filed 03/02/11   Page 16 of 18   Page ID
#:7851

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
|---|---|---|---|
| Title | Gianni Versace v. Monir M Awada, et al | | |

| Good | Mark | Statutory Damages |
|---|---|---|
| Sunglasses | Versace '272 mark | $15,000 |
| | Medusa '686 mark | $15,000 |
| Watches | Versace '272 mark | $10,000 |
| | Medusa '093 mark | $10,000 |
| Wallets | Medusa '686 mark | $20,000 |
| | Versace '984 mark | $20,000 |
| | Gianni Versace '270 mark | $20,000 |
| Belts | Medusa '918 mark | $30,000 |
| | Medusa '686 mark | $30,000 |
| Jackets | Medusa '686 mark | $50,000 |
| Dress shirts | Medusa '686 mark | $100,000 |
| Polo shirts | Medusa '686 mark | $50,000 |
| Knit tops | Medusa '686 mark | $15,000 |
| Sweaters | Medusa '686 mark | $5,000 |
| TOTAL | | $390,000 |

**5. Injunction**

Neither the parties nor the Court have spent time addressing the imposition of an
injunction in this case. However, the propriety of an injunction under the circumstances is not
reasonably in dispute. Accordingly, the judgment in this case should include a permanent
injunction barring Tres Hermanos and Awada from any further use of the Versace marks for any
purpose.

**D. CONCLUSION**

EX-4- 46

Case 2:03-cv-03254-GAF-RNB   Document 1638   Filed 08/30/11   Page 46 of 49   Page ID
#:8155
Case 2:03-cv-03254-GAF -RNB   Document 1624   Filed 03/02/11   Page 17 of 18   Page ID
#:7852

**LINK:**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
| Title | Gianni Versace v. Monir M Awada, et al | | |

Versace, as the prevailing party in this case, is to prepare a proposed judgment setting forth a permanent injunction and the entire statutory damage award in this case. The jury's verdict in the Group B trial should be attached to the proposed judgment.

**IT IS SO ORDERED.**

EX-4-47

Case 2:03-cv-03254-GAF -RNB   Document 1624   Filed 03/02/11   Page 18 of 18   Page ID #:7853

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 03-03254 GAF (RNBx) | Date | March 2, 2011 |
|---|---|---|---|
| Title | Gianni Versace v. Monir M Awada, et al | | |

**ATTACHMENT A**

GROUP A GOODS AND MARKS PER STIPULATION

| Type of Good | Allegedly Infringed Mark |
|---|---|
| Sunglasses (94) | Versace [uncertain]<br><br>Medusa [1,725,686] |
| Watches (6) | Gianni Versace [1,541,272]<br><br>Medusa [1,875,093] |
| Wallets (206)<br><br>[52 infringe three Verace marks]<br>[154 infringe two Versace marks] | Medusa [1,725,686]<br><br>Versace [2,121,984]<br><br>Gianni Versace [1,641,270] |
| Belts (1,550) | Medusa [1,725,686]; or<br><br>Medusa [2,078,918] |
| Leather Jackets | Medusa [1,725,686]<br><br>Medusa [2,078,918] |
| Cloth Jackets | Medusa [1,725,686] |
| Shirts, sweaters, knits (9,633)<br><br>7 images appear on 89%<br><br>14 different images appear on the other 11% | Medusa [1,725,686]<br><br>Medusa [2,078,918] |

EX-4-48

1

2 <u>**ELECTRONIC PROOF OF SERVICE**</u>

3 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

4   I am employed in the County of LOS ANGELES, State of California.  I am over the age

5 of 18 and not a party to this action.  <u>**My business address is 515 So. Figueroa Street, Suite**</u>

6 <u>**1850, Los Angeles, California  90071.**</u>

7   On <u>**June 6, 2011**</u>, pursuant to the Court's Electronic Case Management Order dated July

8 9, 2003, I instituted service of the foregoing document(s) described as:

9        **AMENDED [PROPOSED] JUDGMENT RE DEFENDANTS:**

10         **1. MONIR M. AWADA**
        **2. TRES HERMANOS, INC.**

11         **3. AWADA BROS., INC.**
        **4. AWADA BROTHERS, INC.**

12

13 on the interested parties by:

14   **XXXX** **Submitting** an electronic version of the document(s) via file transfer protocol

15 (FTP) to United States District Court, 312 North Spring Street, Los Angeles, CA 90012 through

16 the upload feature at https://ecf.cacd.uscourts.gov/cgi-bin/login.pl.

17   _____ Transmitting a hard copy of the document(s) to **all parties** by facsimile at **[insert**

18 **fax number]** for scanning and uploading onto the Web Site, https://ecf.cacd.uscourts.gov/cgi-

19 bin/login.pl.

20   _____ Providing a hard copy of the document(s) to _____ for hand delivery

21 to United States District Court, 312 North Spring Street, Los Angeles, CA  90012 for scanning

22 and uploading onto the Web Site https://ecf.cacd.uscourts.gov/cgi-bin/login.pl.

23   _____ Mailing a hard copy of the document(s) by United States Postal Service to United

24 States District Court, 312 North Spring Street, Los Angeles, CA  90012 for scanning and

25 uploading onto the Web Site https://ecf.cacd.uscourts.gov/cgi-bin/login.pl..

26   _____ Other (please specify):  Service will be deemed effective as provided for in the

27 Electronic Case Management Order.

28

EX-4 - 49

1        I declare that I am employed in the office of a member of the bar of this court at

2   whose direction the service was made.  I declare under penalty of perjury under the laws of the

3   United States of America that the above is true and correct.

4

5        Executed on **June 6, 2011** at **Los Angeles, California**.

6

7   RENEE MORGAN-HAMPTON

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EX-4- 50